**ORIGINAL**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
SEP 16 2008
CLERK, U.S. DISTRICT COURT
By _____
        Deputy

| | |
|---|---|
| CHRISTIANE TRUJILLO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VERIZON WIRELESS; VERIZON COMMUNICATIONS, INC.; AT&T, INC.; AT&T MOBILITY LLC; SPRINT NEXTEL CORPORATION; VODAFONE GROUP PLC; T-MOBLE INTERNATIONAL AG; and T-MOBILE USA, INC.,<br><br>Defendants | Civil Action No. _____<br><br>**3-08CV1628-G**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Plaintiff Christiane Trujillo ("Plaintiff"), on behalf of herself and a Class of all those similarly situated, brings this action for damages and injunctive relief under the antitrust laws of the United States against Defendants, demanding a trial by jury, and complaining and alleging as follows:

## NATURE OF THE CASE

1.  This lawsuit is brought as a class action on behalf of all individuals and entities who purchased text messaging services (defined below) directly from the Defendants, their predecessors or their controlled subsidiaries and affiliates, from at least as early as January 1, 2005 to the present (the "Class Period"). Plaintiff alleges that during the Class Period the Defendants conspired to fix, raise, maintain or stabilize prices of text messaging services sold in

the United States. Because of Defendants' unlawful conduct, Plaintiff and other Class members paid artificially inflated prices for text messaging services and, as a result, have suffered antitrust injury to their business or property.

2. Text messaging allows users to communicate without using their mobile phone plan minutes without logging on to their electronic mail providers. Text messaging has the added benefit of allowing certain disabled people a more accessible means of communication when compared to oral communication. Because of these and other benefits, text messaging is a widely used form of communications—according to some estimates, twice as many people use text messaging as use electronic mail.

3. Over the past several years, text messaging rates have increased by 100%, from 10 cents per message to 20 cents per message. These increases were not the result of an increase in the cost of providing text messaging services, but instead, resulted from Defendants' unlawful agreements to raise the price of text messaging services.

## JURISDICTION AND VENUE

4. This action is instituted under Section 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to receive treble damages and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff and the members of the Class by reasons of the violations, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C. § 1.

5. This action is also instituted to secure injunctive relief against Defendants to prevent them from further violations of Section 1 of the Sherman Act, as hereinafter alleged.

6. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 and by Section 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

7. Venue is found in the Northern District of Texas pursuant to Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22 and 26 and 28 U.S.C. § 1391(b), (c) and (d). Venue is proper in the Northern District of Texas because during the Class Period, one or more of the Defendants resided, transacted business, was found or had agents in the Northern District of Texas, and because a substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in the Northern District of Texas.

8. Defendants, on information and belief, maintain offices, have agents, transact business, or are found within the Northern District of Texas.

9. This Court has in personam jurisdiction over each of the Defendants because each was engaged in illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons and entities residing in, located in, or doing business throughout the United States.

## DEFINITIONS

10. As used herein, the term:
   a. "Text messaging services" includes text messaging services sold by cellular phone providers to customers in connection with wireless phones services;
   b. "Person" means any individual, partnership, corporation, association or other business or legal entity; and
   c. "Class Period" refers to the period from at least January 1, 2005 to the present.

## PLAINTIFF

11. Plaintiff Christiane Trujillo is a citizen and resident of Miami, Florida. Plaintiff directly purchased text messaging services from Defendant AT&T Mobility, LLC or its co-

conspirators. As a result of the conspiracy herein alleged, Plaintiff was (and continues to be) injured in her business and property by reason of the antitrust violations alleged herein—specifically, she paid supra-competitive prices for text messaging services and was injured in the amount of the overcharges.

## DEFENDANTS

12. Defendant Verizon Wireless is a Delaware corporation with its headquarters located at One Verizon Way, Basking Ridge, New Jersey 07920. Verizon Wireless is a joint venture of Verizon Communications Inc., and Vodafone Group PLC. Verizon Wireless sold text messaging services in the Northern District of Texas and the United States during the Class Period.

13. Defendant Verizon Communications, Inc. is a Delaware corporation with its principal place of business at 140 West Street, New York, New York 10007. Verizon Communications, Inc. sold text messaging services in the Northern District of Texas and the United States during the Class Period, directly and through its predecessors, successors, affiliates and/or subsidiaries.

14. Defendant AT&T, Inc. is a Delaware corporation with its principal place of business at 208 S. Akard Street, Dallas, Texas 75202. AT&T Inc. sold text messaging services in the Northern District of Texas and the United States during the Class Period, directly or through its predecessors, successors, affiliates and/or subsidiaries.

15. Defendant AT&T Mobility, LLC ("AT&T Mobility") is a Delaware corporation with its principal place of business at Glenridge Highlands Two, 5565 Glenridge Connector, Atlanta, Georgia 30342. AT&T Mobility, formerly Cingular Wireless, is a subsidiary of AT&T, Inc. AT&T Mobility sold text messaging services in the Northern District of Texas and the United States during the Class Period, directly or through its predecessors, successors, affiliates

and/or subsidiaries. AT&T, Inc. and AT&T Mobility together are referred to in this Complaint as "AT&T."

16. Defendant Sprint Nextel Corporation ("Sprint Nextel") is a Kansas corporation with its principal place of business at 6200 Sprint Parkway, Overland Park, Kansas 66251. Sprint Nextel sold text messaging services in the Northern District of Texas and the United States during the Class Period, directly or through its predecessors, successors, affiliates and/or subsidiaries.

17. Defendant Vodafone Group PLC is a public limited company incorporated in England under registered number 1833679. Its registered office is Vodafone House, The Connection, Newbury, Berkshire, RG14 2FN, England. In the United States Vodafone Group's associated undertaking operates as Verizon Wireless. Vodafone Group sold text messaging services in the Northern District of Texas and the United States during the Class Period, directly or through its predecessors, successor, affiliates and/or subsidiaries. Defendants Verizon Wireless, Verizon Communications and Vodafone Group PLC are collectively referred to in this Complaint as "Verizon."

18. Defendant T-Mobile International AG ("T-Mobile International") is a German corporation with its principal place of business at Landgrabenweg 151, 53227 Bonn, Germany. T-Mobile International sold text messaging services in the Northern District of Texas and the United States during the Class Period, directly or through its predecessors, successor, affiliates and/or subsidiaries.

19. Defendant T-Mobile USA, Inc. ("T-Mobile USA") is a Delaware corporation with its principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006. T-Mobile USA is a subsidiary of T-Mobile International which, in turn, is owned by Deutsche Telekom

5

AG. T-Mobile USA sold text messaging services in the Northern District of Texas and the United States during the Class Period, directly or through its predecessors, successors, affiliates and/or subsidiaries. T-Mobile International and T-Mobile USA are together referred to in this Complaint as "T-Mobile."

20. Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

## CO-CONSPIRATORS

21. Various other persons, firms and corporations not named as Defendants in this Complaint may have participated as co-conspirators with Defendants in the violations alleged herein and/or aided, abetted and performed acts and made statements in furtherance of the conspiracy.

## CONGRESSIONAL INVESTIGATION

22. On September 9, 2008, United States Senator Herb Kohl, Chairman of the Senate Antitrust Subcommittee, announced that he sent a letter on that date to the presidents and chief executive officers of Verizon, AT&T, Sprint Nextel and T-Mobile expressing concern over the sharply rising rates that those companies have charged customers for text messaging services since 2005.

23. Senator Kohl's letter noted that according to industry experts, the increased rate for text messaging services did not appear to be justified by an increase in the costs associated with

text messaging services, but instead, reflected a decrease in competition and an increase in market power among the Defendants.

24. Senator Kohl also noted in his letter that the four companies, which collectively serve more that ninety percent (90%) of the nation's wireless subscribers, had increased their rates for sending and receiving text messages by 100% since 2005. He also expressed concern that each company had changed its rates for text messaging at nearly the same time, with identical price increases, concluding that "[t]his conduct is hardly consistent with the vigorous price competition we hope to see in a competitive marketplace."

25. Senator Kohl's letter also requested that each company:

   a. explain the cost, technical or any other factors that justify a 100% increase in the cost of text messaging form 2005 to 2008;

   b. provide data on the utilization of text messaging during 2005 to 2008;

   c. provide a comparison of prices charged for text messaging as compared to other services offered by the company, such as prices per minute for voice calling, prices for sending emails and prices charged for data service, such as internet access over wireless devices, from 2005 to the present; and

   d. state whether the company's text messaging pricing structure differs in any significant respect from the pricing of the company's three main competitors.

## CLASS ACTION ALLEGATIONS

26. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

27. Plaintiff brings this action on behalf of themselves and as a class action under the provisions of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following class:

> All persons (excluding governmental entities, defendants, co-conspirators, other sellers of text messaging services and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing) who purchased text messaging services in the United States directly from any of the Defendants or their co-conspirators, or any present or former parent, subsidiary or affiliate thereof, at any time during the period, from January 1, 2005 until the present.

28. Plaintiff believes that there are millions of Class members as above described, the exact number and their identities being known by Defendants.

29. The Class is so numerous and geographically dispersed that joinder of all members in impracticable.

30. There are questions of law and fact common to the Class relating to the existence of the conspiracy alleged and the type and common pattern of the resulting injury sustained including, but not limited to:

    a. Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize prices of text messages services sold in the United States;

    b. The identity of the participants in the conspiracy;

    c. The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

    d. Whether the alleged conspiracy violated Section 1 of the Sherman Act;

    e.  Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business and property of Plaintiff and other members of the Class;

    f.  The effect of Defendants' conspiracy on the prices of text messaging services sold in the United States during the Class Period; and

    g.  The appropriate measure of damages sustained by Plaintiff and other members of the Class.

31. Plaintiff's claims are typical of the claims of the Class members and Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is a direct purchaser of test messaging services and her interests are coincident with, and not antagonistic to, the other members of the Class. Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

32. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct of Defendants.

33. Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

34. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

35. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class is readily definable and is one for which records should exist in the files of Defendants and their co-conspirators. Prosecution as a class action

will eliminate the possibility of repetitious litigation. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This class action presents no management difficulties that would preclude its maintenance as a class action.

## TRADE AND COMMERCE

36. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

37. The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate commerce.

38. During the time period covered by this Complaint, Defendants and their co-conspirators sold text messaging services throughout the United States.

39. Defendants and their co-conspirators, and each of them, have used instrumentalities of interstate commerce to provide and sell text messaging services.

40. Defendants and their co-conspirators sold text messaging services in a continuous and uninterrupted flow of interstate commerce to customers located in the states other than the states in which Defendants are headquartered.

## THE TEXT MESSAGING INDUSTRY

41. The market for text messaging services in the United States is highly concentrated. Defendants collectively serve over ninety percent (90%) of the cellular phone customers in the United States. In recent years the market has become increasingly concentrated, with the number

10

of major national competitors declining from six to four as a result of consolidations and acquisitions. The large national carriers also continue to acquire smaller regional competitors. High market concentration and wide public disclosure of rates makes it easier for cartel members to monitor the pricing of other cartel members.

42. Text messaging files are very small and generally limited to 160 characters per message as compared to much larger files, such as emails and/or music or video downloads.

43. Despite minimal costs, Defendants charge huge mark-ups and enjoy high profit margins on text messaging services.

44. In 2005 and earlier text messaging rates offered by Defendants equaled ten (10) cents per message (sent or received).

45. Since 2005, Defendants have made coordinated price hikes, first raising their prices by fifty (50) percent to fifteen (15) cents per message, in or around mid-2007, and then raising their prices another fifty (50) percent (compared to the original price) to twenty (20) cents per message late in 2007 and in the beginning of 2008.

46. The costs to the cellular phone provider associated with transmitting text messages are minimal, have not increased appreciably since 2005 and certainly have not increased 100%—like the fees charged by Defendants for this service—over the past two years.

47. CNET News notes that: "nothing . . . has changed [in the past two years] in terms of the cost associated with delivering [text messaging] service." M. Reardon, "The Rising Cost of Texting," July 1, 2008, *available at* http://news.cnet.com/8301-10784_3-9982251-7.html?tag=nefd.top .

48. Increases in the prices for text messaging services charged by Defendants, therefore, are not justified by increases in the costs associated with providing those services and are more likely the product of collusion among Defendants.

## VIOLATIONS ALLEGED

49. Price fixing and other agreements in restraint of trade are especially pernicious within a highly concentrated market with high barriers to entry. The structure of the text messaging market is such that price-fixing is feasible. The market is highly concentrated with few providers, almost all of whom are the Defendants. Further, text messaging is a highly standardized product with high barriers to entry in the form of expensive technology and economies of scale.

50. Beginning at least as early as January 1, 2005 and continuing until the present, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators engaged in a continuing agreement, understanding and conspiracy in restraint of trade to artificially raise, fix, maintain or stabilize prices of text messaging services in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

51. The contract, combination and conspiracy consisted of a continuing agreement, understanding and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise and maintain or stabilize prices for text messaging services in the United States.

52. In formulating and effectuating aforesaid contract, combination or conspiracy, Defendants and their co-conspirators accomplished the goals that they combined and conspired to accomplish including, among other things:

a. agreeing to charge prices at certain levels and otherwise to fix, increase, maintain or stabilize prices of text messaging services sold in the United States;

b. exchanging information on prices of text messaging services;

c. coordinating the timing of increases on prices for text messaging services;

d. monitoring and implementing the arrangements among cartel members; and

e. selling text messaging services at the agreed upon prices.

53. Defendants and their co-conspirators engaged in the activities described above for the purpose of effectuating the unlawful arrangements to fix, maintain, raise and/or stabilize prices of text messaging services.

54. Defendants' supra-competitive prices were implemented by, *inter alia*, a series of coordinated price increases beginning in or about 2005. Since 2005, the prices charged by Defendants for text messaging services have doubled. Since 2005, Defendants have changed their prices for text messaging services at almost the same time and by identical amounts.

55. These coordinated price increases have continued on a regular basis through the present, with the actual and intended results that Plaintiff and the Class members have paid (and continue to pay) supra-competitive prices for text messaging services

## EFFECTS

56. The unlawful contract, combination or conspiracy has had the following affects, among others:

a. prices charged by Defendants and their co-conspirators to Plaintiff and the members of the Class for text messaging services were maintained at artificially high and non-competitive levels; and

13

b. Plaintiff and the members of the Class had to pay more for text messaging services than they would have paid in a competitive marketplace unfettered by Defendants' and their co-conspirators' collusive and unlawful price-fixing.

57. During and throughout the period of the aforesaid contract, combination or conspiracy, Plaintiff and the members of the Class directly purchased text messaging services in the United States.

58. Plaintiff and the members of the Class members paid more for the text messaging services that they purchased than they would have paid under condition of free and open competition.

59. As a direct and proximate result of the illegal combination, contract or conspiracy, Plaintiff and the members of the Class have been injured and financially damaged in their respective businesses and property, in amounts which are presently undetermined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, respectfully prays that this Court (i) certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, (ii) designate Plaintiff as the representative plaintiff of the Class, (iii) designate Plaintiff's counsel as Class Counsel, and (iv) on final trial or hearing:

A. The contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators, be adjudged to have been in violation of Section 1 of the Sherman Act, 15 U.S.C.§ 1.

B. Judgment be entered for Plaintiff and the members of the Class against Defendants for three (3) times the amount of damages sustained by Plaintiff and the Class as

allowed by law, together with the costs of this action, including reasonable attorneys' fees, litigation expenses and court costs.

C. That Defendants and their affiliates, successors, transferees, assignees, officers, directors, partners, agents and employees, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner:

    1. continuing, maintaining or reviewing the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect; and

    2. communicating, or causing to be communicated, to any other person engaged in the sale of text messaging services except to the extent necessary to conduct a bona fide business transaction between the parties to such communications.

D. Plaintiff and the members of the Class have such other, further and different relief as the case may require and/or the Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all of her claims and causes of action.

**DATED:**  September 15, 2008

15

Respectfully submitted,

THE COFFMAN LAW FIRM

By: /s/ Richard Coffman
       By permission
Richard L. Coffman, Esq.
First City Building
505 Orleans St., Suite 505
Beaumont, Texas 77701
(409) 833-7700
(866) 835 8250 FAX
rc@cofflaw.com

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS**

Case 3:08-cv-01623-G Document 13-3    Filed 09/15/2009    Page 16 of 17

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

ORIGINAL

## I. (a) PLAINTIFFS
Christiane Trujillo

**DEFENDANTS**
Verizon Wireless, et al.

3-08CV1628-G

(b) County of Residence of First Listed Plaintiff: **Dade County, Florida**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

RECEIVED SEP 1 6 2008 CLERK US DISTRICT COURT NORTHERN DISTRICT OF TEXAS

(c) Attorney's (Firm Name, Address, and Telephone Number)
Richard Coffman, The Coffman Law Firm, 505 Orleans St., Suite 505, Beaumont, Texas 77701 (409) 833-7700

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Reg. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
**15 U.S.C. 1**
Brief description of cause:
Conspiracy to fix, raise, maintain or stabilize prices of text messaging services

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 09/15/2008
SIGNATURE OF ATTORNEY OF RECORD: *Richard Coffman, by permission MSJ*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____